Michael F. WITKOWICH, Plaintiff,

v.

Alberto GONZALES, as Attorney General of the United States, the United States Marshals Service, and Benigno Reyna as Director of the United States Marshals Service, Defendants.

No. 05 Civ. 7756(WCC).

United States District Court,
S.D. New York.

Feb. 25, 2008.

Lovett & Gould, White Plains, NY (Kim Berg, of Counsel), for Plaintiff.

Michael J. Garcia, United States Attorney for the Southern District of New York, Ross E. Morrison, Ass't United States Attorney, New York, NY, for Defendants.

## OPINION AND ORDER

CONNER, Senior District Judge.

Plaintiff, Michael Witkowich, brings suit against Michael B. Mukasey,[1] in his official capacity as Attorney General of the United States; Benigno Reyna, in his official capacity as Director of the United States Marshals Service ("USMS"), and the USMS. Plaintiff, who has been a United States Marshal for over thirty years, alleges he was denied a promotion due to his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq. Plaintiff also alleges that he suffered retaliation after filing this lawsuit. Defendants now move for summary judgment. They argue that the person they promoted was more qualified than plaintiff, and that plaintiff can not establish that he was passed over because of his age. Defendants also argue that the allegedly retaliatory acts about which plaintiff complains are legally insufficient to support such a claim. For the following reasons, defendants' motion is granted in part and denied in part.

## BACKGROUND

### I. The USMS for the Southern District of New York

The USMS provides a variety of important functions, including: court security, prisoner security and operations, fugitive apprehension, and the maintenance and distribution of property seized by federal agents in criminal and civil cases. (Guccione Decl. ¶ 3.) The United States ("U.S.") Marshal for the Southern District of New York is the highest ranking USMS employee in the District. (Id. ¶ 5.) Immediately below that position is the Chief Deputy U.S. Marshal, followed by three Assistant Chief Deputies, which are General Schedule ("GS") grade level 14 positions. (Id.) There are approximately eleven Supervisory Deputy U.S. Marshals (GS-13 level positions) under each Assistant Chief Deputy, and there are approximately 85 Deputy U.S. Marshals under the Supervisory Deputies. (Id.) There are two USMS offices in the Southern District: the main office in Manhattan and a sub-office in White Plains. (Id. 6.) Plaintiff is a Supervisory Deputy U.S. Marshal. (Id. ¶ 7.)

Promotions to USMS positions of level GS-13 and higher are normally handled according to a merit-based promotion system. (Lyles Decl. ¶ 5.) Employees learn of

---

**1.** Attorney General Mukasey has been automatically substituted as a defendant pursuant to FED.R.CIV.P. 25(d).

vacancies through vacancy announcements and must apply in writing. (*Id.* ¶ 6.) The application is scored by a panel of subject-matter experts and given a numerical score based on the applicant's level of relevant experience. (*Id.* ¶ 8.) The USMS Merit Promotion Team also reviews the application and assigns the applicant three numerical scores in the categories of training, education and awards. (*Id.*) All of those scores are then combined with the applicant's scores on a written exam and essay to create an overall merit-promotion score.[2] (*Id.* ¶ 9.) After the scores have been compiled, the applicants are ranked based on their scores, and the Merit Promotion Team prepares a "best qualified list," which usually consists of the five highest-scoring applicants. (*Id.* ¶ 11.) Candidates for level GS–14 and above positions also go through an interview process. (*Id.* ¶ 12.)

The appropriate U.S. Marshal then receives the best qualified list in alphabetical order and without the candidates' numerical scores. (*Id.* ¶ 13.) The Marshal also receives each candidate's promotion resume[3] and data such as the candidate's current GS level, job title, entry-on-duty date with the USMS, date of last promotion and interview assessments. (*Id.* ¶ 14.) The Marshal then completes a Recommendation Worksheet ranking the candidates in the order in which he recommends them for the promotion. (*Id.* ¶ 15.) This ranking is sent to the USMS Career Board, along with all the materials that the Marshal reviewed for each candidate. (*Id.* ¶ 17.) The Career Board may also request additional information about the candidates. (*Id.*) The Career Board in turn makes a recommendation to the Director

of the USMS, who receives all materials made available to the Board and may request additional materials as well. (*Id.* ¶ 19.) The director then selects an employee for the position. (*Id.*)

## II. *Plaintiff's Application for Promotion to Assistant Chief Deputy*

In late 2004, an Assistant Chief Deputy U.S. Marshal in the Southern District of New York retired, creating a vacancy at that position. (Guccione Decl. ¶ 8.) Plaintiff applied for the position, as did eighteen other USMS employees. (Berg Aff., Ex. 21 ¶ 16; Lyles Decl. ¶ 24.) Plaintiff did not receive the promotion, which went instead to another applicant, Brian Mullee. (Lyles Decl. ¶ 32.) At the time, plaintiff was 51 years old and Mullee was 37. (Berg Aff., Ex. 21 ¶ 20.)

Mullee received the highest numerical score of any candidate, 87.19, which made him number one on the best qualified list. (Lyles Decl. ¶ 28.) Plaintiff, with a score of 74.46, was number six out of seven on the list. (*Id.*) The U.S. Marshal for the Southern District of New York, Joseph Guccione, received the list, which was in alphabetical order and did not contain the candidates' scores or rankings. (Guccione Decl. ¶ 9.) Guccione recommended Mullee for promotion to Assistant Chief. (*Id.* ¶ 11.) He ranked plaintiff sixth out of the seven candidates who made the best qualified list. (*Id.*, Ex. B.) The Career Board in turn recommended Mullee to the then-Director of the USMS, who awarded him the position on May 27, 2005. (Lyles Decl. ¶¶ 31–32.) Plaintiff filed a Notice of Intent to Sue with the Equal Employment Opportunity Commission ("EEOC") on July 22,

---

**2.** The maximum possible total score is 100: 30 for the merit-promotion exam, 30 for experience, 10 for training, 14 for education, 8 for awards and 8 for the essay. (*Id.* ¶ 10.)

**3.** The resume describes "the candidate's work history, major accomplishments with dates, licenses, certifications, special skills, and collateral duties [that the candidate is performing voluntarily]." (*Id.* ¶ 14.)

2005 (Berg Aff., Ex. 10) and then filed this lawsuit on September 2, 2005.

## DISCUSSION

### I. *Standard of Review*

Summary judgment is appropriate when there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden is on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding whether to grant summary judgment, the Court resolves all ambiguities and draws all permissible factual inferences in favor of the non-moving party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

■ Applying the summary judgment standard in an employment discrimination case can be difficult because such cases "necessarily turn on the intent of the alleged discriminator, and plaintiffs will rarely uncover direct evidence of discriminatory intent." *O'Sullivan v. N.Y. Times*, 37 F.Supp.2d 307, 314 (S.D.N.Y.1999). Nevertheless, to survive summary judgment an employment discrimination plaintiff must present more than "conclusory allegations of discrimination; ... he must offer concrete particulars to substantiate [his] claim." *Id.* (internal quotation marks and citations omitted). In other words, the plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not discrimination was the real reason'" for the employment action. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996) (quoting *Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir.1994)) (internal brackets omitted).

The plaintiff must show a genuine issue of material fact as to both the veracity of defendants' stated reasons for promoting another person over the plaintiff, and whether it is more likely that a discriminatory motive played a role in that decision. *See Gallo v. Prudential Residential Servs., LP.*, 22 F.3d 1219, 1225 (2d Cir.1994).

### II. *The ADEA*

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA applies to workers over the age of 40. *Id.* § 631(a).

■ The familiar *McDonnell Douglas* burden-shifting analysis used in Title VII cases applies in the ADEA context as well. *See, e.g., Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). To make out a prima facie case for failure to promote, a plaintiff must show that he was a member of a protected class, that he was qualified for the job for which he applied, that he was denied the job and that the denial occurred under circumstances giving rise to an inference of impermissible discrimination. *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir.2000). The showing that a plaintiff must make to survive summary judgment on the issue of the prima facie case is *de minimis*. *See Abdu–Brisson*, 239 F.3d at 467; *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203–04 (2d Cir.1995); *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

If the plaintiff establishes a prima facie case, the burden shifts to the employer to offer a "legitimate, nondiscriminatory busi-

ness rationale for its actions." *Abdu–Brisson*, 239 F.3d at 466. If the employer does so, the presumption of age discrimination disappears, and the burden shifts back to the plaintiff to prove that the employer's stated reason is pretextual and that "age discrimination was the true reason for the adverse employment action." *Id.* (internal citations omitted).

## III. Plaintiff's Age Discrimination Claim

### A. Prima Facie Case

█ Plaintiff has made out a prima facie case of age discrimination. At age fifty-one, he is within the protected class. He was also qualified for the position for which he applied, having been selected for the "best qualified list" of the top seven applicants.[4] Plaintiff did not receive the promotion he sought, and the fact that the position went to someone fourteen years younger raises an inference of discrimination. *See Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir.2000) (holding that the replacement of a sixty-year-old employee by a thirty-one-year-old employee satisfied the fourth element of a prima facie case); *Tarshis v. Riese Org.,* 211 F.3d 30, 38 (2d Cir.2000) (finding that the replacement of the plaintiff by someone eight years younger raised an inference of age discrimination), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Ranieri v. Highland Falls–Fort Montgomery Sch. Dist.,* 198 F.Supp.2d 542, 544 (S.D.N.Y.2002) (holding the fourth element satisfied where plaintiff was replaced by someone ten years younger).

### B. Defendants' Legitimate Business Reason for Not Promoting Plaintiff

Defendants argue that Mullee was promoted instead of plaintiff because Mullee was the most qualified person for the job. (Defs. Mem. Supp. Summ. J. at 14.) They offer several facts in support of this contention. First, there are the candidates' application scores. Mullee received a higher overall score than plaintiff(87.19 versus 74.46) or any other applicant, and he also received a higher score than plaintiff in four of the six categories that make up the overall score (the two applicants received the same score in the other two categories). (*Id.* at 14; Lyles Decl. ¶ 28.) Thus, when the best qualified list was compiled, Mullee was the top-ranked candidate and plaintiff was sixth out of seven. (Defs. Mem. Supp. Summ. J. at 15.)

Defendants also argue that Mullee rightfully earned the recommendation of Joseph Guccione, the U.S. Marshal for the Southern District of New York. (*Id.*) Guccione had worked directly with Mullee on joint Southern District–Eastern District assignments, and the Marshal and Chief Deputy of the Eastern District both recommended Mullee to Guccione. (*Id.*) Guccione also based his recommendation of Mullee on the fact that the latter had taken on five "collateral" duties, was a Contracting officer, and had earned a law degree while working for the USMS. (*Id.*) Guccione felt that plaintiff was less qualified than Mullee because plaintiff had fewer collaterals, was not an attorney, had worked mostly in the White Plains sub-office (which involved a lower volume of supervisory work than the Manhattan main office), and "had not on a number of occasions demonstrated good judgment,[5] or a strong work ethic." (*Id.*)

---

4. Defendants do not argue that plaintiff was unqualified for the position, but rather that Mullee was more qualified. (*See* Defs. Mem. Supp. Summ. J. at 14.)

5. Guccione refers to an incident in February 2005 in which a prisoner was believed to have swallowed something while sitting at counsel table during a proceeding at the federal courthouse in Manhattan. (Guccione Decl. ¶ 19.) When such an event occurs, proper procedure requires that the inmate be taken to a physician for an x-ray, and/or put in a "dry" cell (a

In recommending Mullee to the Director of the USMS, who ultimately made the decision to hire him, the Career Board considered Guccione's recommendation as well as the fact that Mullee had a law degree and five collaterals. (*Id.*)

■ By offering evidence of Mullee's superior qualifications, defendants have stated a legitimate business reason for promoting him instead of plaintiff. *See Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir.2001). The burden therefore shifts back to plaintiff to prove that this reason is a pretext for age discrimination. *See Abdu–Brisson*, 239 F.3d at 466.

### C. *Plaintiff's Argument That Defendants' Reason is Pretextual*

■ An employment discrimination plaintiff can defeat summary judgment if his " 'prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.' " *Byrnie*, 243 F.3d at 102 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). But plaintiff is not required to prove that defendants' justification was false or played no role in the promotion decision. *See Cronin*, 46 F.3d at 203. He need only show that the "legitimate" reason was not the only one behind defendants' decision, and that age was also a motivating factor. *See id.; Holtz v. Rockefeller & Co.*, 258 F.3d 62, 81 (2d Cir.2001) ("[P]laintiff may ... rely on evidence—circumstantial or otherwise—showing that 'an impermissible reason was "a motivating factor," without proving that the employer's proffered explanation' played no role in its conduct.") (quoting *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 120 (2d Cir.1997)).

Plaintiff offers a two-pronged attack on defendants' legitimate business reason for not promoting him. First, plaintiff argues that he, not Mullee, was the more qualified candidate. Second, plaintiff claims that a series of events shows age bias on the part of certain key decision makers in the USMS for the Southern District of New York.

### 1. *Plaintiff's and Mullee's Qualifications*

Plaintiff offers a multitude of arguments that he was more qualified for the Assistant Chief position than Mullee was. Plaintiff first points out that he had more work and supervisory experience than Mullee did at the time they applied for the promotion. (Pl. Mem. Opp. Summ. J. at 8.) Plaintiff notes that he had sixteen more

---

cell with a toilet but without plumbing) at the Metropolitan Correctional Center ("MCC") until he passes the object. (*Id.*) But in this case, plaintiff instructed the Deputy in charge of the prisoner to have the prisoner defecate in a garbage can in an attorney interview room in the courthouse. (*Id.*) Plaintiff claims he did this because there were no dry cells available at the MCC and there was no time to arrange for one. (Pl. Mem. Opp. Summ. J. at 16.) Guccione maintains that, "no matter what the particular circumstances of that incident," plaintiff's actions were "simply a gross deviation from standard operating procedure." (Guccione Reply Decl. ¶ 3.)

The parties have devoted a considerable amount of attention to this issue in their memoranda of law. Despite plaintiff's claim that the facts of this incident are "hotly contested" (Pl. Mem. Opp. Summ. J. at 15), it is undisputed that Guccione disagreed with plaintiff's handling of the situation and that such disagreement provides a legitimate, nondiscriminatory reason for Guccione's recommendation. Beyond that, the facts of the incident are not material for purposes of this summary judgment motion.

years experience working for the USMS and had been a supervisor for twenty-three years, whereas Mullee had only five years of supervisory experience. (*Id.*) Plaintiff had also served in the position to which he sought promotion (Assistant Chief) on a temporary basis several times; Mullee had done so as well, but for a shorter amount of time and in the Eastern District of New York rather than the Southern District. (*Id.*)

Plaintiff also disputes the notion that Mullee's number of collaterals made him a more qualified candidate. Mullee had five collaterals, while plaintiff had only three (and was actually performing only two). (Guccione Decl. ¶¶ 14, 23.) But plaintiff argues that, contrary to defendants' assertion, Mullee's larger number of collaterals is not indicative of a strong work ethic because collaterals are assigned by supervisors, not volunteered for. (Pl. Mem. Opp. Summ. J. at 12.) Plaintiff also claims that some of his collaterals were more demanding and time-consuming than Mullee's. (*Id.*)

Next, plaintiff contests defendants' claim that Mullee's law degree enhanced his qualification for the Assistant Chief position. Defendants maintain that "[l]egal training is an invaluable asset for much of USMS work, as legal issues often arise in connection with the performance of district duties." (Defs. Mem. Supp. Summ. J. at 9.) Plaintiff disagrees, on the grounds that

Assistant Chief is not a legal position and, in the past, at least one person has been promoted to Assistant Chief without even an undergraduate degree. (Pl. Mem. Opp. Summ. J. at 14.)

Plaintiff also notes that he received better interview scores than Mullee did, a fact that defendants do not dispute.[6] And plaintiff maintains that his and Mullee's numerical merit-promotion scores are irrelevant to the inquiry into defendants' legitimate business reason because those scores were not reported to Guccione, the Career Board or Director Reyna. (Pl. Mem. Opp. Summ. J. at 13.) Defendants point out that these scores reflect the judgment of USMS personnel who rated Mullee higher than plaintiff, and are therefore evidence that Mullee was in fact the stronger candidate. (Defs. Reply Mem. Supp. Summ. J. at n. 2.)

Finally, plaintiff alleges that he, unlike Mullee, had an "unblemished" record with the USMS (except for "one disciplinary write up approximately twenty years ago").[7]

While discriminatory employment practices are prohibited, a court must " 'respect the employer's unfettered discretion to choose among qualified candidates.' " *Byrnie*, 243 F.3d at 103 (*quoting Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183(D.C.Cir.1996)). Our role is simply to determine whether a disparity in plaintiff's

---

6. The candidates received interview scores of "very weak," "weak," "average," "strong," or "very strong" in eight categories. Plaintiff received two scores of "average," five "strong," and one "very strong." (Guccione Decl., Ex. A.) Mullee received five "average" and three "strong." (*Id.*)

7. Pursuant to a Confidentiality Order entered May 25, 2006, the parties have filed redacted versions of their motion papers that omit reference to the precise nature of the "blemish"; the parties provided chambers with unredacted courtesy copies. Because of the

privacy concerns raised by this particular allegation, we do not discuss the specific facts involved in this Opinion. But we have considered all the facts in the record and the parties' arguments in reaching our decision. As discussed below, even if defendants were aware of this event (and it is by no means certain that they were: Guccione denies having known about it, and plaintiff's evidence to the contrary is essentially speculation), they still would have been entitled to conclude that Mullee was the better qualified candidate based on his and plaintiff's relative strengths and weaknesses.

and Mullee's qualifications would allow a fact finder to conclude that defendants' justification for promoting the latter was a pretext for discrimination. We are not to act as a "super personnel department," second-guessing the merits of defendants' legitimate business decisions. *See Meacham v. Knolls Atomic Power Lab.*, 461 F.3d 134, 144 (2d Cir.2006); *Perez v. Consol. Edison Corp. of N.Y.*, 2006 WL 2707316, at *10 (S.D.N.Y. Sept.20, 2006); *Drummond v. IPC Int'l Inc.*, 400 F.Supp.2d 521, 528 (E.D.N.Y.2005).

■ But second-guessing the wisdom of promoting Mullee is exactly what plaintiff asks us to do. Plaintiff does not argue that Mullee was unqualified for promotion to Assistant Chief, only that plaintiff was more qualified, chiefly by virtue of his experience.[8] A plaintiff may defeat summary judgment by showing that he was objectively so much better qualified than the person promoted over him that the employer's justification for the decision must be pretextual. *See Byrnie*, 243 F.3d at 103. Here, however, plaintiff has not shown himself to be objectively better qualified than Mullee. He has merely asserted that the USMS judged the applicants' qualifications incorrectly, and should have concluded that: plaintiff's experience working at the Southern District of New York–White Plains office was more valuable than Mullee's experience working in the Eastern District of New York (Pl. Mem. Opp. Summ. J. at 10–12); plaintiff's collaterals required more work and were therefore more valuable than Mullee's (*id.* at 12–13); the "blemish" on Mullee's record should have been held against him (*id.* at 9–10), but the incident where plaintiff had a prisoner defecate in a garbage can

at the federal courthouse in Manhattan should not have been held against plaintiff (*id.* at 15–17); plaintiff had better interview scores than Mullee (*id.* at 14); Mullee's law degree did not enhance his qualifications (*id*).

■ Plaintiff's disagreement with the way in which the USMS weighed his and Mullee's qualifications does not create an issue of material fact. *See Jimoh v. Ernst & Young*, 908 F.Supp. 220, 226 (S.D.N.Y. 1995) ("As a matter of law, an employee's disagreement with an employer's business decision is insufficient to prove discriminatory conduct.") An employer has the right to decide how it will value the various qualifications different candidates bring to the table. *See Scaria v. Rubin*, 117 F.3d 652, 654–55 (2d Cir.1997) (affirming grant of summary judgment in defendant's favor where defendant had chosen to hire a person who had less education but more relevant experience than plaintiff did); *Sandman v. Mediamark Research, Inc.*, 2002 WL 424660, *6, 2002 U.S. Dist. LEXIS 4518, at *17 (S.D.N.Y. Mar. 15, 2002) (granting summary judgment to defendant where plaintiff's evidence of pretext consisted of conclusory allegations of biased behavior by a supervisor and a dispute regarding plaintiff's qualifications; plaintiff and person promoted over her "[b]oth ... appear[ed] to have their fair share of strengths and weaknesses"). We must not "second-guess the employer's assessment of the importance of various qualifications, absent some evidence that the asserted weighing was pretextual." *Collette v. St. Luke's Roosevelt Hosp.*, 2002 WL 31159103, at *11 (S.D.N.Y. Sept.26, 2002). And, as discussed below, plaintiff's other

---

**8.** As defendants rightly note, the USMS merit promotion system is not a seniority system; it is, as the name indicates, a merit system, and experience is but one of many factors considered. (*See* Defs. Mem. Supp. Summ. J. at 17.)

"Seniority (*i.e.*, years of service) at the USMS is not a separate category or criterion and is not assigned any score in the merit promotion process." (Lyles Decl. ¶ 20.)

evidence of discrimination is so weak that it provides no reason to question the integrity of the promotion process.

 This does not mean that we entirely disregard plaintiff's arguments on the qualifications issue. A plaintiff can use a discrepancy between his qualifications and those of the person promoted to defeat summary judgment if "the plaintiff's credentials ... [were] so superior ... that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Byrnie*, 243 F.3d at 103 (quoting *Deines v. Tex., Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280–81 (5th Cir.1999)). This is a "weighty burden," *id.*, but all is not necessarily lost for the plaintiff who fails to meet it. Even if the qualifications discrepancy is insufficient to create a question of material fact on its own, it retains its probative value and should be considered along with the plaintiff's other evidence of discrimination. *See id.; Inganamorte v. Cablevision Sys. Corp.*, 2006 WL 2711604, *10, 2006 U.S. Dist. LEXIS 67872, at *30 (E.D.N.Y. Sept. 21, 2006) ("[J]ust because the discrepancy ... [in] qualifications does not on its own create a material issue of fact, that does not mean the discrepancy is stripped of all probative value.").

Plaintiff has not met the *Byrnie* standard: in light of all the evidence defendants have presented, a reasonable person could easily conclude that Mullee was the more qualified candidate. But whatever qualification discrepancy plaintiff can show still retains its probative value, so we turn next to plaintiff's other evidence of age discrimination in the USMS, keeping in mind the evidence he has presented on the issue of qualifications.

### 2. Plaintiff's Other Evidence of Age Bias Within the USMS

In addition to disputing defendants' assessment of his and Mullee's qualifications, plaintiff presents a series of events that he maintains show age bias on the part of USMS decision makers: a statement by a member of the Career Board that the promotion process was a "beauty contest"; the fact that Guccione ranked the candidates for Assistant Chief more or less in age order, a "pattern and practice of promoting individuals in their 30s over individuals who are more qualified and in the protected age group"; and other incidents in which Guccione allegedly treated older USMS employees poorly.

#### a. The "Beauty Contest"

In his Affidavit in Opposition to Defendant's Motion for Summary Judgment, plaintiff alleges the following:

> Subsequent to the promotion of Mullee, and in May 2006, I ran into Chief Donald I. Rackley at a retirement event. Chief Rackley asked me how my "thing" was going—referring to my then pending lawsuit. I stated in response that he should know how it was going since he was Chairman of the Career Board. Rackley then told me that the promotional process had become a "beauty contest." At that time, I was wearing shorts and I stated that my legs must be too old to win the beauty contest. In response Rackley laughed and said he was looking forward to retiring.

(Berg Aff., Ex. 21 ¶ 21.) Plaintiff interprets these comments literally. "A reasonable trier of fact could readily conclude that Rackley's reference to the appearance of the candidates for promotion[9] (i.e. how 'beautiful' they were) was a direct refer-

9. Plaintiff has not offered any evidence that the decision makers in the promotion system were familiar with the candidates' physical appearance.

ence to age," particularly given the ways in which "modern society repeatedly tie[s] age and beauty together." (Pl. Mem. Opp. Summ. J. at 7.)

Rackley, for his part, says he does not recall the conversation, but maintains that he never has and never would ask plaintiff about a pending lawsuit against the USMS. (Rackley Reply Decl. ¶ 5.) Rackley also states that he does not recall describing the promotion process as a "beauty contest" to plaintiff, but he acknowledges describing it as such to other USMS employees in other conversations. (*Id.* ¶ 6.) He claims that "the comment has absolutely nothing to do with age," but rather reflects his opinion that "USMS employees with the best personalities and inter-personal skills, who tend to be more well liked by their fellow employees and supervisors, and who sell themselves better with their inter-personal skills, have been doing better in the merit promotion process." (*Id.*) Given that plaintiff is entitled to "every permissible factual inference" as the non-moving party at the summary-judgment stage, *see Anderson*, 477 U.S. at 247–50, 106 S.Ct. 2505, we will assume that his version of events is accurate.

It is well settled that a verbal comment can serve as evidence of discriminatory motive, provided there is a sufficient "nexus" between the remark and the employment decision at issue. *See Seltzer v. Dresdner Kleinwort Wasserstein, Inc.*, 356 F.Supp.2d 288, 295 (S.D.N.Y.2005); *Schreiber v. Worldco, LLC*, 324 F.Supp.2d 512, 518 (S.D.N.Y.2004); *Rui Zhang v. Barr Labs., Inc.*, 2000 WL 565185, *4, 2000 U.S. Dist. LEXIS 6237, at *13 (S.D.N.Y. May 8, 2000). When a plaintiff offers evidence of a discriminatory comment, the defendant will often argue that the comment was merely a "stray remark," too far

removed in time or context from the employment decision at issue to serve as evidence of discrimination. *See Seltzer*, 356 F.Supp.2d at 295.

Those are the arguments plaintiff and defendants make here. Defendants claim that the "beauty contest" comment was a stray remark because Rackley made it while he was no longer a member of the Career Board, and over a year after Mullee's promotion. (Defs. Reply Mem. Opp. Summ. J. at 15.) Plaintiff points out that Rackley had "substantial influence" on the promotion process [10] and made the comment while discussing this lawsuit with plaintiff. (Pl. Mem. Opp. Summ. J. at 7–8) (quoting *Morris v. N.Y. City Dep't of Sanitation*, 2003 WL 1739009, at *6 (S.D.N.Y. Apr.2, 2003)).

The Second Circuit has recently clarified the way in which district courts should evaluate evidence of allegedly discriminatory comments. A district court should not simply classify discriminatory remarks as "stray" or "not stray" and reject those falling in the former category as insufficient to prove discrimination. *See Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 115 (2d Cir.2007); *Koestner v. Derby Cellular Prods.*, 518 F.Supp.2d 397, 402 (D.Conn.2007) ("[T]he Court does not need to determine whether the remarks … are 'stray.' Instead, the Court focuses on whether the remarks are sufficiently probative of age discrimination such that the jury could reasonably find that [plaintiff] was terminated because of his age."); *Carras v. MGS 782 Lex, Inc.*, 2007 WL 2710108, *6, 2007 U.S. Dist. LEXIS 67876, at *15 (S.D.N.Y. Sept. 12, 2007). Instead, "all comments should be considered in the context of all the evidence." *Carras*, 2007 WL 2710108, *6, 2007 U.S. Dist. LEXIS 67876, at *15. The Second Circuit ex-

---

**10.** Although Rackley was no longer on the Career Board when he made the remark, he was Chairman of the Board at the time the Board considered plaintiff's application. (*See* Rackley Decl. ¶ 5.)

plained in *Tomassi* that it had used the term "stray remark" in earlier cases simply to illustrate the fact that "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." 478 F.3d at 115.

In determining the probative value of an allegedly discriminatory comment, courts in this circuit consider the following factors:

(1) who made the remark, i.e., a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, i.e., whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made.

*Seltzer*, 356 F.Supp.2d at 295. Two of these factors weigh in favor of a conclusion that the "beauty contest" remark shows discrimination: Rackley was a decision maker when the decision at issue was made, and he made the comment during a discussion of plaintiff's lawsuit. On the other hand, the remark was made approximately one year after that decision, a length of time that, under the third factor, diminishes its probative value. *Cf. id.* at 298 (noting the "remoteness" of a remark made approximately a year and a half before the plaintiff was terminated).

But it is the third factor, the content of the remark, that settles the issue. In the context of this case and plaintiff's failure to provide any legally sufficient evidence of discrimination on the part of the USMS, the phrase "beauty contest" is simply too vague, and too susceptible to any number of benign meanings, to constitute evidence of age discrimination. Again, the Second Circuit has instructed us not to apply a binary "stray"/"not stray" framework, but to remember that "remote and oblique" remarks are of minimal probative value and that the relevance of a remark depends on its "tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class." *Id.* Rackley's calling the promotion process a "beauty contest" does not have any such tendency. The comment on its face is not about age, and it is only through a strained and unreasonable interpretation that it could bear that meaning. Plaintiff would have the fact finder somehow interpret the remark both literally and as a code word at the same time, so that "beauty" means physical appearance and not interpersonal skills, but really means age instead, or additionally, since the two concepts are so closely linked. (*See* Pl. Mem. Opp. Summ. J. at 7.) No reasonable fact-finder could make that interpretation, or conclude that this remark, even taken with all the other evidence plaintiff has presented, shows that age was a determinative factor in the decision to promote Mullee rather than plaintiff.

### b. *Guccione's Ranking of the Candidates*

As described above, in the second stage of the promotion process Guccione received the list of the seven best qualified candidates (in alphabetical order), along with each candidate's promotion resume and data such as the candidate's current GS level, job title, entry-on-duty date with the USMS, date of last promotion and interview assessments. (*See* Lyles Decl. ¶ 14.) He then completed a Recommendation Worksheet ranking the candidates in the order in which he recommended them for promotion. (*See id.* ¶ 15.) This ranking was sent to the USMS Career Board, along with all the materials that Guccione reviewed for each candidate. (*See id.* ¶ 17.) The Board then made a recommendation to USMS Director Reyna, who made the ultimate decision to promote Mullee. (*See id.* ¶ 19.)

Plaintiff claims that Guccione ranked the candidates for Assistant Chief "in order of age"; in other words, the youngest applicants were ranked highest:

| Candidate | Guccione's ranking | Age at the time of Mullee's promotion |
|-----------|--------------------|----------------------------------------|
| Mullee | 1 | 37 |
| Drago | 2 | 37 |
| Tomasi | 3 | 41 |
| Elcik | 4 | 40 |
| Alvarado | 5 | 55 |
| Witkowich | 6 | 51 |
| Murphy | 7 | 50 |

(Pl. Mem. Opp. Summ. J. at 6–7.) Plaintiff characterizes this list as "direct evidence that age was a substantial factor in the promotional determination." (*Id.* at 6.) He considers the list particularly significant because "every candidate [Guccione] has recommended has been in fact promoted ... Guccione's recommendations [are] always rubber stamped by the Career Board and the Director." (*Id.* 1 & n. 2.) The evidence of this is Guccione's deposition testimony that he has recommended approximately six people for promotion during his tenure with the USMS, and to the best of his recollection all were promoted. (*See id.* at 1; Berg Aff., Ex. 1 at 105.)

Taken in isolation, this list may appear to indicate that an important decision maker in the promotion process favored younger employees. But it is much less significant when viewed in light of the entire promotion process and the larger context of this case. Guccione did not make the decision to promote Mullee instead of plaintiff. He merely recommended Mullee

to the Career Board, which made its own evaluation of the candidates and provided a recommendation to Director Reyna, who reviewed the candidates himself and made the ultimate decision. Guccione was two steps removed from the actual decision at issue, and he played no role in selecting from the initial pool of applicants the seven "best qualified" who would be eligible for promotion. His recommendation was only one part of a four-step process, and plaintiff has not offered any meaningful evidence that the process was corrupted by bias at any other stage or alleged bias on the part of any other individual involved.

▆▆▆▆ Nor do we believe plaintiff can prove, based on the results of approximately six recommendations, that the Career Board "rubber stamped" Guccione's recommendations, or that the Director of the USMS did not exercise unbiased, independent judgment. Courts routinely reject statistical evidence of discrimination based on such small sample sizes because the results are not probative. *See, e.g., Pollis v. New Sch. for Soc. Research,* 132 F.3d 115, 121 (2d Cir.1997) ("The smaller the sample, the greater the likelihood that an observed pattern is attributable to [nondiscriminatory] factors and accordingly the less persuasive the inference of discrimination to be drawn from it."); *Alleyne v. Four Seasons Hotel—N.Y.,* 2001 WL 135770, at *12 (S.D.N.Y. Feb.15, 2001) (citing cases). By the same reasoning, we conclude that plaintiff can not prove the entire promotion process is a sham, and that Guccione's opinion was all that mattered, based on the results of just six recommendations.[11]

---

**11.** In his attempt to discredit the USMS promotion process, plaintiff claims that on two occasions, successful applicants were told they had been promoted before the process was complete. In the first instance, plaintiff alleges: "I have personal knowledge that [the applicant] was notified he was selected for a promotional position before the time that I was even interviewed for me opportunity." (Berg Aff., Ex. 21 ¶ 10.) Such a vague, unsubstantiated allegation can not defeat summary judgment. *See, e.g., Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998) ("The nonmoving party may not rely on conclusory allegations or unsubstantiated speculation.").

Furthermore, the list is far less probative than plaintiff would have us believe. Contrary to plaintiff's assertion, the list is not actually in age order. Three of the seven candidates are ranked higher than a younger candidate, and the oldest candidate (by four years) is not ranked last, but fifth out of seven. Plaintiff's attack on the credibility of the promotion process is further undermined by the fact that, of the seven candidates who survived the initial cut and made the best qualified list (out of an initial applicant pool of nineteen), five were in the protected age group.

Plaintiff has not presented any evidence that would enable a fact finder to conclude that Guccione's recommendation was anything other than a legitimate ranking of the candidates based on his unbiased assessment of their qualifications.

### c. *Other Occasions on Which Plaintiff Was Denied a Promotion*

In his Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, plaintiff alleges a "pattern and practice of promoting individuals in their 30s over individuals who are more qualified and in the protected age group." [12] (Pl. Mem. Opp. Summ. J. at 17.) The evidence of this consists of three occasions on which plaintiff applied for a promotion that ultimately went to a younger candidate: the 2005 promotion to Assistant Chief (which went to Mullee) and two earlier promotions for which the statute of limitations has expired. (*See id.* at 17–20.)

■■■■■ A pattern-and-practice discrimination claim is based on "allegations of widespread acts of intentional discrimination against individuals." *Robinson v. Metro–North Commuter R.R.*, 267 F.3d 147, 158 (2d Cir.2001). To succeed, a plaintiff must "prove more than sporadic acts of discrimination; rather, [he] must establish that intentional discrimination was the defendant's 'standard operating procedure.'" *Id.* (*quoting Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). "[G]eneralized allegations that discrete discriminatory acts constitute a pattern or practice of unlawful discrimination are insufficient" to sustain a pattern-and-practice claim. *Thomas v. S.E.A.L. Sec., Inc.,* 2007 WL 2446264, *10, 2007 U.S. Dist. LEXIS 63841, at *31 (S.D.N.Y. Aug. 30, 2007).

To begin with, we note that it is uncertain whether a pattern-and-practice claim can be brought other than as a class action. *See id.; Blake v. Bronx Leb. Hosp. Ctr.,* 2003 WL 21910867, *5, 2003 U.S. Dist. LEXIS 13857, at *14–15 (S.D.N.Y. Aug. 11, 2003) ("[T]he court doubts that a plaintiff can bring a 'pattern and practice'

---

Plaintiff also claims that he "was present when then Supervisory Inspector Lenny De-Paul received a telephone call advising him that he would be selected for promotion to the position of Assistant Chief. The position had not even been announced and DePaul knew he would be selected without having first gone through the supposedly required promotional process." (Berg Aff., Ex. 21 ¶ 35.) Plaintiff has not offered evidence from DePaul himself nor identified the person who allegedly called him. Moreover, insofar as plaintiff offers DePaul's statement to prove the truth of the matter asserted, it is inadmissible hearsay and can not be used to defeat summary judgment. *See ABB Indus. Sys.,*

*Inc. v. Prime Tech., Inc.,* 120 F.3d 351, 357 (2d Cir.1997) (noting that hearsay evidence "would … be inadmissible at trial and cannot create a triable issue of feet"); *Rosensaft v. Ashton Tech. Group, Inc.,* No. 97 Civ. 3138, 1997 WL 749384, *2, 1997 U.S. Dist. LEXIS 19216, at *6 (S.D.N.Y. Dec. 4, 1997) ("[T]he only issue is whether inadmissible hearsay can raise a triable issue of fact sufficient to defeat a motion for summary judgment. The short answer is it cannot.").

**12.** Plaintiff's Complaint does not allege a pattern or practice of age discrimination by the USMS.

claim in a non-class action complaint."). We need not take a position on that issue, however, because plaintiff has not come close to stating such a claim here. Plaintiff has alleged a series of discrete discriminatory events over the course of three years. He has not presented any evidence of a discriminatory policy or "standard operating procedure" at the USMS.

■ Plaintiff can not maintain a cause of action as to the 2002 and 2003 promotions because he did not file a Notice of Intent to Sue with the EEOC within 180 days of those events or commence an EEOC administrative proceeding. *See Long v. Frank*, 22 F.3d 54, 56 (2d Cir. 1994); (Morrison Decl., Ex. B at 186–87.) Any claim based on those events is therefore time-barred, although plaintiff may offer those prior non-promotions as background evidence in support of his timely claim, which is how we will consider them. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106, (2002); *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir.2004).

In 2002, when he was forty-eight years old, plaintiff applied for promotion to Supervisory Criminal Investigator. (Berg Aff., Ex. 21 ¶ 8.) The promotion went to Timothy Williams, who was "approximately" thirty-nine years old at the time. (*Id.* ¶¶ 11, 12.) Plaintiff claims that at the time of the promotion, Williams had only fifteen years experience with the USMS, compared to plaintiff's twenty-seven years; Williams had only "approximately two to four years of supervisory experience," whereas plaintiff had twenty, and while Williams was serving as Acting Chief Inspector, two of his subordinates stole "tens of thousands of dollars" from the USMS. (*Id.* ¶ 11.) Plaintiff also claims to have "personal knowledge" that Williams was

told he had been selected for the promotion before plaintiff interviewed for it. (*Id.*)

In 2003, at age forty-nine, plaintiff applied for promotion to Assistant Chief. (*Id.* ¶ 13.) He was passed over in favor of Eric Timberman, who was "approximately" thirty-seven years old. (*Id.* ¶¶ 14, 15.) At the time of this promotion, plaintiff had twenty-eight years of experience with the USMS, while Timberman had only fifteen; plaintiff had twenty-one years of supervisory experience, whereas Timberman had "approximately three to four"; and Timberman had a history of disciplinary issues during his time with the USMS. (*Id.* ¶ 14.)

As to both the 2002 and 2003 promotions, plaintiff has offered no evidence that age discrimination was a factor, other than the mere difference in age between himself and the successful candidate. Plaintiff emphasizes the fact that he had more experience than the candidate promoted in each instance. But as discussed above, experience is just one of many factors considered in the USMS promotion process, and plaintiff has presented no evidence which would allow a fact finder to conclude that he was not just more experienced, but more *qualified* for these positions. These allegations are nothing more than another invitation for us to play the role of "super personnel department," an invitation we decline. Although we consider these events as background for our analysis of the 2005 non-promotion, they are background evidence of the weakest sort.

### d. *Guccione's Treatment of Other Workers in the Protected Age Group*

Plaintiff alleges that Guccione has treated workers in the protected age group, "disparately in a worse sense than those under 40." [13] (*Id.*) First, when Guccione

---

**13.** Plaintiff describes Guccione's actions as a "pattern and practice." (Pl. Mem. Opp.

Summ. J. at 21.) Once again, we note the uncertainty as to whether plaintiff can assert

became the U.S. Marshal for the Southern District, two supervisory deputies (ages forty-seven and fifty) "were personally advised to transfer out of the Southern District," which they eventually did. (Berg Aff., Ex. 21 ¶ 49.) We never learn who told these people to transfer or why. Plaintiff merely insinuates without alleging directly—let alone offering evidence to support the notion—that these employees were told to transfer because they would face age discrimination under Guccione's leadership.

Next, plaintiff claims that a USMS secretary who was over fifty years old was "replaced" by a woman in her twenties. (*Id.* ¶ 50.) This secretary was apparently not fired, however, but transferred to the Eastern District of New York "with a pay reduction as a proximate result of Guccione's disparate treatment of her due to her age." (*Id.*) The Complaint alleges no facts supporting plaintiff's conclusion as to the reason for the pay reduction.

Plaintiff also states that he saw Guccione treat an administrative officer who was in her fifties "disparately from younger individuals in that he unjustly ridiculed her and assigned her menial tasks." (*Id.* ¶ 51.) Finally, plaintiff claims that Guccione once got a thirty-something Deputy "unarrested" but refused to do the same for a fifty-year-old Deputy. (*Id.* ¶ 52.)

▮ All of these statements are purely conclusory allegations unsupported by any actual evidence of discriminatory acts or intentions. They are therefore insufficient to defeat summary judgment. *See, e.g., Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985).

**D. *Summary Judgment is Granted as to Plaintiff's Age Discrimination Claim***

▮ In deciding a defendant's summary judgment motion when the plaintiff has offered multiple forms of evidence, a court must always keep in mind the entire record before it:

> [T]he court should not consider the record solely in piecemeal fashion, giving credence to innocent explanations for individual strands of evidence, for a jury, in assessing whether there was impermissible discrimination and whether the defendant's proffered explanation is a pretext for such discrimination, would be entitled to view the evidence as a whole.

*Howley,* 217 F.3d at 151. In this case, plaintiff has offered a great number of allegations in his attempt to rebut defendants' justification for not promoting him. Each one is simply too vague, conclusory, unsupported or otherwise legally insufficient to do so. Taken as a whole, they come no closer to raising a genuine issue of material fact regarding defendants' justification for their decision. Plaintiff can not show that his qualifications were so superior to Mullee's that no reasonable person would have promoted the latter over the former, which means he must offer some other evidence of discrimination to survive summary judgment. *See Byrnie,* 243 F.3d at 103. But plaintiff's "direct evidence" of discrimination—the "beauty contest" remark and Guccione's recommendation—is simply incapable of supporting the interpretation plaintiff attaches to it. And as for the events plaintiff calls a "pattern and practice" of discrimination, he has offered absolutely no evidence that any of these events were motivated by bias. Plaintiff can not make up in quantity of allegations for what his case lacks in

---

that claim suing only on behalf of himself. And once again the answer does not matter

because plaintiff has not alleged facts sufficient to sustain such a claim.

quality. Defendants' motion for summary judgment is granted as to plaintiff's age discrimination claim.

## IV. *Plaintiff's Retaliation Claim*

■ In his Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, plaintiff alleges that defendants have retaliated against him in various ways since he filed a Charge of Discrimination with the EEOC on May 27, 2005.[14] (*See* Pl. Mem. Opp. Summ. J. at 24.) Defendant asks us to dismiss this claim because it was not stated in plaintiff's Complaint.[15] (*See* Defs. Mem. Supp. Summ. J. at 24.) Courts in this circuit have consistently held that a party may not raise a new claim for the first time when opposing a motion for summary judgment. *See Gamble v. Chertoff*, 2006 WL 3794290, at *4 (S.D.N.Y. Dec.27, 2006); *Martinez v. City of New York*, 2003 WL 2006619, at *4 (S.D.N.Y. Apr.30, 2003); *Beckman v. U.S.P.S.*, 79 F.Supp.2d 394, 407 (S.D.N.Y.2000) (citing cases). However, most of the alleged retaliatory acts occurred after plaintiff filed suit, and FED R. CIV. P. 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."

Rule 15(d) reflects "a 'liberal policy favoring a merit-based resolution of the entire controversy between the parties.' " *Eison v. Kallstrom*, 75 F.Supp.2d 113, 116 (S.D.N.Y.1999) (quoting *Katzman v. Sessions*, 156 F.R.D. 35, 38 (E.D.N.Y.1994)). To that end, leave to file a supplemental pleading should be freely granted, provided that "the supplemental facts connect [the supplemental pleading] to the original" and "delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility" are not factors in the litigation. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir.1995).

Although plaintiff has not moved to supplement the Complaint with his retaliation claim, we grant him leave to do so *sua sponte*. *See, e.g., Steger v. Delta Airlines, Inc.*, 382 F.Supp.2d 382, 387 (E.D.N.Y. 2005) ("[E]ven if not requested by the Plaintiff, the Court may sua sponte grant leave to amend.") Plaintiff's new allegations are closely related to those raised in the Complaint and throughout the litigation thus far. They involve the same subject matter (alleged age discrimination by the USMS), many of the same people and the same employer. They also took place shortly after the 2005 promotion that is the subject of this litigation.[16]

There is no indication that plaintiff has engaged in dilatory tactics or bad faith behavior, nor do defendants accuse him of

---

**14.** Our granting summary judgment against plaintiff on his underlying age discrimination claim does not preclude him from maintaining a retaliation claim. *See McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001) (noting that the employer's conduct of which plaintiff complained need not actually have been a Title VII violation for plaintiff to state prima facie case of retaliation); *Manoharan v. Columbia Univ. Coll of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988); *Avillan v. Potter*, 2006 WL 3103309, *16, 2006 U.S. Dist. LEXIS 80062, at *53 (S.D.N.Y. Nov. 1, 2006).

**15.** The Complaint discusses only the 2002, 2003 and 2005 promotional decisions, and the sole cause of action merely states that "Defendants' conduct violated Plaintiff's rights as guaranteed by the Age Discrimination in Employment Act." (Complt.¶ 13.)

**16.** Mullee's promotion was announced on May 27, 2005 (Reyna Decl. ¶ 9); plaintiff filed an EEO complaint on May 31, 2005; the first alleged act of retaliation took place on July 5, 2005 and the latest occurred in October 2006. (*See* Pl. Mem. Opp. Summ. J. at 24–29.)

having done so. And granting leave to supplement the Complaint would not result in undue prejudice to defendants. They have been on notice of this new claim since plaintiff's deposition, in which he stated that "punitive actions" had been taken against him since he filed the lawsuit and went on to describe several of those actions. (*See* Morrison Decl., Ex. B at 198–200.) And plaintiff will not be adding this claim on the eve of trial; a trial date has not yet been set.

Finally, plaintiff's allegations of retaliation are sufficient to show that allowing him to supplement his Complaint would not be futile. A prima facie case of retaliation under the ADEA requires a showing that:

> (1) the plaintiff was engaged in an activity protected under the ADEA; (2) the employer was aware of the plaintiff's participation in the protected activity; (3) the plaintiff was subject to an adverse employment action; and (4) there is a nexus between the protected activity and the adverse action taken.

*Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 465 (2d Cir.1997). An adverse employment action must be " 'more disruptive than a mere inconvenience or an alteration of job responsibilities,' " and can include a " 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.' " *Galabya v. N.Y. City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993)). Plaintiff alleges that his superiors at the USMS were aware of his protected EEO activity and that they retaliated against him in response by, among other things: transferring him to a less prestigious and desirable division just three months after he filed an EEO complaint; changing his hours; failing to notify him of new promotional opportunities; and failing to promote him. (Pl. Mem. Opp. Summ. J. at 25.) Based on these and other allegations, we cannot say that it would be futile for plaintiff to supplement his Complaint.

## CONCLUSION

For all of the foregoing reasons, defendants' motion for summary judgment is granted as to plaintiff's age discrimination claim and denied as to plaintiff's retaliation claim. Plaintiff is granted leave to supplement his Complaint to include his retaliation claim. Plaintiff must file his supplemented complaint within twenty days of the issuance of this Opinion and Order.

SO ORDERED.